the law. On the contrary, it would be sanctioned by a sound policy. Such a power must necessarily exist in every superintending agency for the legal enforcement of the public claims. In the 8th volume of the Laws United States (page 345) are provisions which sustain this view. The cases of Leonard v. Bates, 1 Blackf. 172, and Cunningham v. Gwinn, 4 Blackf. 341, are relied on to show that a defect of title or an inability to make a good title, may be set up in an action for the consideration; and that when the deed is to be made, on the payment of the money, it should be tendered or at least be ready for delivery.

The land having been purchased by Canby, from the government, with the public funds, which caused his defalcation, he relinquished the same to the government as an act of justice, which was accepted by way of compromise; and the land was sold to the defendants through a special agency, and the note given on which this action is brought. We see no defect of power in the officers of the government to make this arrangement. A similar power has more or less been exercised since the foundation of the government. In the nature of things, the title of the defendant, which the government will make, will be indisputable. No adverse claim can in any way arise, by which the validity of the title can be questioned. The demurrer to the special plea is sustained. Judgment.

## Case No. 15,414.

UNITED STATES v. The HUDSON.

[See Case No. 6,829.]

## Case No. 15,415.

UNITED STATES v. HUGER et al.

[1 Hughes, 397;[1] 2 Am. Law Rev. 782.]

Circuit Court, D. South Carolina. May, 1868.

OFFICIAL BONDS—PAYMENT OF PUBLIC MONEY TO INSURRECTIONISTS.

An officer of the United States in an insurrectionary state of the Confederate government, who had paid money of the United States to the Confederate States during the war, under compulsion, without collusion, contrivance, evasion, or willingness, though actual force was not used to compel him to pay, is not responsible to the United States for its reimbursement, for the reason that the Confederate government had been recognized as a belligerent by the United States, and because the official bond of the officer to the United States implied the obligation on the part of the United States to secure to the obligor such a condition of things as would render his fulfilment of his bond possible.

This was an action on a bond given by the defendant as postmaster of the city of Charleston. The suit was brought to recover a balance of $5,576.41, due the government at the time of the breaking out of the Civil War,

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

with interest. It appeared that Mr. [Alfred] Huger had been appointed by President Jackson, in 1832, that he had held the office from that time to 1861, and that he had satisfactorily performed all the duties enjoined upon him by law. It appeared further, that he had made considerable effort to turn over the property in his hands to the United States government, but that he had not been able to do so, except as regarded a small part thereof, and that he had finally, on demand, surrendered the balance to the postmaster-general of the Confederate government.

D. T. Corbin, Dist. Atty., for the Government.

Porter, Campbell, Magrath & Rutledge, for defendant.

BRYAN, District Judge. The cases cited in the books all having reference to a settled order of things, all having reference to the possible personal private delinquency, or want of care, or misfortune of the obligor, a condition of things anticipated as probable or possible, and therefore in the minds of the parties to the bond, I hold that the rulings of the supreme court can have no proper application to a class of cases wholly different, and that the party cannot be held to an engagement, not in the mind of either party, and in a condition of things not possibly anticipated by either party, in which one party could not possibly fulfil such engagement, and the other party could not give him any proper help to fulfil it, that is, that without any default on his part, and in the absence of a condition of things which rendered it possible for him to execute the bond, he shall be compelled to execute the bond. That condition of things was presented in a state of civil war, where the territory of which the defendant was a resident was held under the domination of a belligerent—the absolute domination of a revolutionary government struggling for its life, compelled to put forth every possible exertion of power, inevitably arbitrary, and unscrupulous from the very fact of its necessities, and alike unable and unwilling to brook opposition. It was in the very nature of things a military despotism, whose commands must unhesitatingly be obeyed, and in the light of the past, it is but truth to say, whose commands were so obeyed.

The great Civil War from which we have emerged not only demanded despotic powers in the South, but almost equally despotic power in the United States. The great government which succeeded in this contest, that great government itself, with all its mighty resources, was compelled to resort to arbitrary power. Civil liberty was scarcely consistent with the struggle between the two governments. Both were essentially military at the time, drawing all powers to themselves, and compelled of necessity to act in an arbitrary manner, liberty itself being the inevitable sacrifice. It was in such a condition of mili-